FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

Post Deprivation remedy for unauthorized, intentional deprivation of Plaintiff's
**COMPLAINT** Rights under the Eighth
Amendment.

Hill R4779
(Last Name) (Identification Number)

Merlin Dancey
(First Name) (Middle Name)

East MS. Correctional Facility
(Institution)
10641 Hwy 80 west
Meridian, MS. 39307
(Address)
(Enter above the full name of the plaintiff prisoner, and address
plaintiff in this action)

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
MAR 21 2017
ARTHUR JOHNSTON
BY_____ DEPUTY

V.

CIVIL ACTION NUMBER: 3:17cv192-CWR-LRA
(to be completed by the Court)

EMCF/MTC Warden F. Shaw
Captain Dice, Major Rice,
Sgt. Willard, Officer Tripplet
Officer Miles + MDOC's Commissioner
+ Inmates T. Riley + D. Gardner
(Enter above the full name of the defendant or defendants in this action)

### OTHER LAWSUITS FILED BY PLAINTIFF

**NOTICE AND WARNING:**
The plaintiff must fully complete the following questions. Failure to do so may result in your case being dismissed.

A. Have you ever filed any other lawsuits in a court of the United States? Yes (X) No ( )

B. If your answer to A is yes, complete the following information for each and every civil action and appeal filed by you. (If there is more than one action, complete the following information for the additional actions on the reverse side of this page or additional sheets of paper.)

1. Parties to the action: Merlin Hill v. State of Miss. et al. ~~for the Northern District~~

2. Court (if federal court, name the district; if state court, name the county): U.S. District Court for the Northern District of Miss.

3. Docket Number: 1:10-cv-00122-M-S

4. Name of judge to whom case was assigned: Chief Judge Michael P. Mills

5. Disposition (for example: was the case dismissed? If so, what grounds? Was it appealed? Is it still pending?): dismissed as time barred

(a) Parties to the Action:

(a) Court: U.S. District Court for the Southern District of Miss.

(a) Docket Number: 4:13-cv-88-DPJ-FKB

(a) Name of Judge to whom case was assigned: U.S. Magistrate Judge F. Keith Ball.

(a) Disposition: dismissed (recomendation), case dropped by Plaintiff.

- - - - - - - - - - - - - - - -

(b) Parties to the Action: Merlin Hill v. Carol Walker, et al.

(b) Court: U.S. District Court for the Eastern District of Mich.

(b) Docket Number: 4:13-cv-13897-GAD-MAR.

(b) Name of Judge to whom case was assigned: Gershwin A. Drain.

(b) Disposition: dismissed after Plaintiff's main witness died.

- - - - - - - - - - - - - - -

(c) Parties to the Action: Merlin Hill v. Mr. M. Walker, et al.

(c) Court: U.S. District Court for the Southern District of Miss

(c) Docket Number: 3:14-cv-00862-HTW-LRA.

(c) Name of Judge to whom case was assigned: U.S. Magistrate Judge Linda R. Anderson.

(c) Disposition: Pending Appeal-currently in 5th Circuit.

**PARTIES**

(In item I below, place your name and prisoner number in the first blank and place your present address in the second blank. Do the same for additional plaintiff, if any).

I. Name of plaintiff: Merlin Hill        Prisoner Number: R4779

Address: 10641 Hwy 80 west
Meridian, MS. 39307

(In item II below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use the space below item II for the names, positions, and places of employment of any additional defendants.)

II. Defendant: Rice                                                        is employed as
MTC's EMCF Major                        at 10641 Hwy 80 west
Meridian, MS. 39307

The plaintiff is responsible for providing the court the name and address of each plaintiff(s) as well as the name(s) and address(es) of each defendant(s). Therefore, the plaintiff is required to complete the portion below:

PLAINTIFF:

NAME:                          ADDRESS:




DEFENDANT(S):

NAME:                          ADDRESS:
Warden Frank Shaw            10641 Hwy 80 west, Meridian, MS. 39307
Captain  Dice                10641 Hwy 80 west, Meridian, MS. 39307
Sgt.   Willard               10641 Hwy 80 west, Meridian, MS. 39307
Officer  Tripplet            10641 Hwy 80 west, Meridian, MS. 39307
Officer   Miles              10641 Hwy 80 west, Meridian, MS. 39307
MDOC Commissioner            723 N. President St., Jackson, MS. 39202
Inmate Thomas Riley          10641 Hwy 80 west, Meridian, MS. 39307
Inmate Dalton Gardner        10641 Hwy 80 west, Meridian, MS. 39307

2

## GENERAL INFORMATION

A.    At the time of the incident complained of in this complaint, were you incarcerated because you had been convicted of a crime?

Yes (✗)    No (  )

B.    Are you presently incarcerated for a parole or probation violation?

Yes (  )    No (✗)

C.    At the time of the incident complained of in this complaint, were you an inmate of the Mississippi Department of Corrections (MDOC)?

Yes (✗)    No (  )

D.    Are you currently an inmate of the Mississippi Department of Corrections (MDOC)?

Yes (✗)    No (  )

E.    Have you completed the Administrative Remedy Program regarding the claims presented in this complaint?

Yes (✗)    No (  ), if so, state the results of the procedure:    Denied

_____

F.    If you are not an inmate of the Mississippi Department of Corrections, answer the following questions:

1.    Did you present the facts relating to your complaint to the administrative or grievance procedure in your institution?

Yes (  )    No (  )

2.    State how your claims were presented (written request, verbal request, request for forms): _____

_____

_____

3.    State the date your claims were presented: _____

4.    State the result of the procedure: _____

_____

3

## STATEMENT OF CLAIM

III.   State here as briefly as possible the facts of your case. Describe how each defendant is involved. Also, include the names of
       other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege
       a number of different claims, number and set forth each claim in a separate paragraph. (Use as much space as you need; attach
       extra sheet if necessary.)

       _See Attached "Statement of Claim" (pages 1-4)_

## RELIEF

IV.   State what relief you seek from the court. Make no legal arguments. Cite no cases or statutes.

Immediately be given a replacement pair of either battery operated/
rechargable Hair and Beard Clippers - equivalent to the Philips-
Norelco G370-That were allowed to be stolen from Plaintiff, and
grant Plaintiff a minimum of $3,000.00 in damages for both
punitive and pain + suffering purposes.

Signed this 13th day of March _____, 20 17 .

                                    Noah ___ #R4779

                                    10641 Hwy 80 West, Meridian, MS. 39307
                                    Signature of plaintiff, prisoner number and address of
                                    plaintiff

       I declare under penalty of perjury that the foregoing is true and correct.

March 13th, 2017                        Noah ___ #R4779
(Date)                                  Signature of plaintiff

4

STATEMENT OF CLAIM

III. Specific Facts Within Petitioner's Personal Knowledge.

On Dec.5, 2010, I filed an ARP to have several items legally purchased from the MDOC Canteen replaced after they were unlawfully confiscated during a Shakedown, the ARP was granted at the First Step (see ARP EMCF-11-135, Exhibit A).

On Sept. 9, 2016, I plugged my Clippers into the Electrical Socket under the TV near my cell for their overnight ten(10) hour charge. Due to a fight on the Zone shortly before rackdown the Warden Frank Shaw ordered that our Zone remain on lockdown the following Morning (Sept. 10, 2016), at 0:600 A.M. I began Making requests of the two duty officers to unplug my clippers due to a possible fire hazard from overcharging the Unit — the officers refused my pleas, Shortly thereafter, Warden Frank Shaw came to the Zone to explain why we were locked down and to explain the conditions of our release from lockdown, I then requested that he unplug my clippers for me (which he did), he then proceeded to question me about where and how I got the Clippers. After informing him that I had originally purchased clippers from the MDOC Canteen and that the current one was a replacement given me from an ARP, he requested to see my copy of that ARP - which I promptly passed under my door to him - he then turned and left taking my Clippers and ARP with him. Several hours later his Secretary came to the Zone door and asked the First available inmate if they knew who my Clippers belonged to, that person luckly happened to be my cellmate, he told her yes, she then gave him my Clippers and ARP and left. My cellmate brought me the items and explained how he got them - I was furious about there calousness about the handling of my property.

Jump forward to Jan. 3, 2017, needing a haircut and shave I, at 18:45 plugged my clippers in under the TV to begin their ten(10) hour charge (meaning that they would have to remain charging until 05:00 the next morning when the doors opened), I then placed my chair infront of the TV to watch that nobody messed with them until rackdown, then at rackdown I set my chair just inside my door to situp all Night to continue watching them until my door would be opened at 0:500 and I could take them down.

On Jan. 4, 2017, at 0:200, Thomas Riley (who was supposed to be secured in his cell - like everyone else - had rigged his door and let himself out of his cell), came to my cell door and started saying that he needed to use my clippers to cut his hair before morning I began yelling "NO - leave my clippers alone", at that time the Zone lights came on and the 2 see female duty officers (C/o Tripplet and c/o Miles), entered the Zone to begin 0:200 count. I began yelling to the officers that I needed help because inmate Riley was trying to steal my clippers. As they approached, and came within ten(10) feet of the TV, Dalton Gardner (inmate Riley's cellmate ran up to the TV with a chair, climbed up on it to allow him to reach my clippers, and attempted to untie the tripple knot on the draw-string bag holding up my clippers, Unable to untie the knot he then yanked it off (doing some minor damage to the TV in the process, inmates Thomas Riley and Dalton Gardner then ran, with my clippers, back upstairs and slammed their cell door closed (but only after rigging it to let themselves back out), Officers Tripplet and Miles did not so much as look at them or say anything to them as the incident transpired right in front of them, they only came to my door and for 10 minutes kept telling me that they could not do anything until I gave them a receipt to prove they were mine.

Note - Thomas Riley and Dalton Gardner received NO disciplinary action, NO RVR, NO Nothing for rigging their door to let themselves out of their cell during rackdown, or for interfering with count, or for stealing My Clippers. They were moved from A-Zone to C-Zone (which they wanted anyway as the owed inmates on A-Zone nearly 800 dollars for the drug "Spice", which they are addicted to.

I though was punished by being forced to be locked in my cell until later that day when they were moved off the Zone

I kept telling the two officers that my SPLC Attorney, Aliesha Judkins had borrowed my ARP files and had not returned them yet, and that I wanted to see Captain Dice, because he could verify the clippers are mine. The officers then continued with their count and left.

They returned about 20 minutes later with Sgt. Willard and 2 other male officers, Sgt. Willard wanted to know what my problem was, after I explained everything he said that they would go shake them down.

They returned less than 5 minutes later and Sgt. Willard told me that my clippers are gone and I should accept that and just write them off as lost (I was later informed by the inmates in the cells on each side of Thomas Riley's that when Sgt. Willard and the other officers reached inmate Riley's cell, he informed the officers that they shouldn't bother with anything I say because I have a sex charge and therefore did not deserve any kind of protection, Sgt. Willard agreed and they left.

At approx. 01:500 AM, Captain Dice finally came to the Zone and as they were still locked in their cell (apparently for their protection, as they claimed to fear for their life from me - a 114 lb 55 year old man who cannot lift more than 40-50 lbs against Thomas Riley a SCR shotcaller for HU-3 and Dalton Gardner his bodyguard/enforcer - Each more than twice my size and weight - which was why less than 18 minutes after Captain Dice left I was locked down), he went to their cell to talk to them for 2-3 minutes he loudly proclaimed that he was moving them off of H.U.-3 that day. When Captain Dice came down I asked him about getting my clippers back and he replied "Merlin, I promise I'll get you your clippers back", I informed him (as I did Sgt. Willard), that if they haven't broken them down they most likely have them hidden in their cell light where the keep their drugs and cell phone and charger (when the maintenance workers enter the zone, if you give Saul a package of cookies he will loosen the screws on your light housing in your cell so that you can hide contraband inside - during shakedowns the light fixtures are never searched) I told him that once count cleared and all the doors opened my clippers could be passed to a hall worker and disappear from the H.U-3 Captain Dice then called out that the whole zone would remain on lockdown until my clippers showed up even if it ment remaining on lockdown through the weekend. After he left, as soon as count cleared all the doors opened (he lied) then shortly thereafter an officer approached me and told me that I was being locked down until inmates Riley and Gardner were moved off the zone because they claimed to be in mortal fear of me - I was incredulous

Due to all this I spiraled into a self-destructive state of severe depression were the only way I could release the pain was to let it out by cutting on myself with a broken razor blade I bought for 2 Ramsin Noodles, I was so depressed I was only able to write and file the ARP at the last minute and the pain brought on by having to relive what happened that I cut my arm worse than any previous time, going so far as to try to dig one of the veins out of my arm.

Like I said, ARP No. EMCF-17-210 was filed at the last minute allong with the loss of more than 13 oz. of blood (I let it run down my arm and drip off my fingers into my cup - which holds 13 oz - until it overflowed).

(2)

The First Step Response from Major Rice is a complete lie—and he is fully aware of that simple fact. He was a c/o at EMCF when clippers were sold on the canteen at EMCF (because we are not allowed to have razors because suicidal inmates—such as myself have a tendency to consume the blades), and the only reason they became no longer available is because the state of MS, combined all MDOC facility canteens under a single contractor that did not wish to offer them because they are only approved for use at EMCF. He is also personally aquanted with how and why I had them—as he not only kept trying to take them from me but also tried to prevent me from getting them in the first place, every shakedown he would take them from me and everytime I would present the ARP awarding them to me and he would be instructed that he had to return them to me (the ARP is not only on record at EMCF but also at Parchman's ARP Headquarters), he lied about my not having or providing a receipt, I not only supplied a receipt straight out of MDOC's Canteen Records System, but a EMCF Property slip as well (which is another record at EMCF of not only the existance of clippers at EMCF, but in my possession as well) (see ARP No. EMCF-17-218, Exhibit B).

The Second Step Response from Warden G. Shaw is also a complete lie. He, in the first sentence of his response makes it sound like GEO gave me my clippers as some sort of gift—like a birthday present or something. They did not, they replaced an item lawfully purchased from the EMCF Canteen, which had been unlawfully confiscated from me during a shakedown. And that because it was granted to me by a previous private prison operator that releases them of any responsibility, then let him explain the MP3 players that were gifts to certain inmates at EMCF by GEO that after confiscated —unlawfully—by MTC had to be replaced by order of this honorable court (along with having to pay those inmates $3000.00 in damages).

His next sentence is a complete lie, EMCF is the only facility that they are allowed at, and if they really are considered contraband, then why—after more than a dozen shakedowns since MTC took control of EMCF on July 19, 2011, did I still posess them (up until they were stolen), even when the warden himself tried to confiscate them from me, was he forced to return them to me. If they actually if his statement carried any truthfullness in it at all after any one of those times they would have been taken and I would never have seen them again, instead after each and every time they would have been taken and never returned, but they were always returned through almost no actions taken by me.

He contradicts Major Rice in the next sentence by stating that I did indeed supply a canteen receipt, the only truthfull sentence in his entire response.

He then states that the only allowable items at EMCF are whats listed on the allowable items list in the EMCF Handbook, if that's true does that mean that they are going to confiscate those MP3 players that they just replaced, are they going to confiscate the solar powered calculators that were sold on the canteen prior to MTC's arrival at EMCF, or more recently all the chess games, domino sets, nail clippers, spoons, tablets of paper, stick pens, oils, Prayer Rugs, colored pencils, and over a dozen other items purchased each week by

inmates at this facility that are NOT listed in the handbook on the allowable items list. If you ask anyone (such as the MTC President when she visits), what is allowed and what is not they will tell you that anything purchased from the canteen is allowed, because MDOC controls what is sold on the canteen and MTC has NO control over what MDOC does, but then they try to add that that statement only applies to items purchased after MTC took control of EMCF and everything purchased prior to July 19, 2011, is contraband - the mirrors sold on the canteen on July 18, 2011, are the exact same mirrors sold today, but according to people like Major Faise and Warden F. Shaw, the mirror purchased on July 18, 2011, is contraband and subject to be confiscated at any time - this is completely illogical in every sence of meaning.

I need my clippers for several reasons, one being that I refuse to ever return to the EMCF Barber Shop because if you are NOT a gang member you must pay for a haircut and shave (depending on which barber that runs from $5.00 to $20.00 for a buzz cut), if you cannot or don't pay they use the sharp tips of the blades to cut up your head, neck and face - making sure that they draw plenty of blood and leaving several tufts of uncut hair on your head and face. Another reason is that if you don't pay they will not clean the blades with Barbasol (which they rarely have anyway), and on my last visit they cut me up real bad (I could not even shower until the worst of the cuts had somewhat healed), and a day or so later my jaw broke out with a good size rash with a lot of little blister looking things in it, when examined by Medical I was informed that it was a herpies infection that was spread across my jaw, which returns very often, and I refuse to pass that disease on to anyone else in the same manor it was given to me.

A final Note: I have always been told that an item legally purchased from the canteen cannot be taken away just because someone suddenly decided they didn't want me to have it, and as long as I used the item as intended (as I always have), and never charged another inmate to use it (which I never have), the only way I could be deprived of my clippers was if I transfered to another facility, otherwise they could not take them from me (which is self evident by the number of times they have attempted to confiscate them, but in every case they returned them to me within an hour or two after taking them). But now through this incident, which they could have prevented, but did not even make an attempt they are trying to do just that.

Therefore, since MTC personnel allowed my clippers to be stolen, took no action to stop it as it was happening, made no actual attempt at recovery, took no disciplinary action against the perps for any of there actions that night, Plaintiff request this Hon. Court to order MTC to replace my hair/beard clippers, and that each defendant be ordered to pay Plaintiff $3000.00 in accumulative damages for their actions/inactions in this cause

(9)

This is a Request for Administrative Remedy

Name: Merlin Hill
Number: R4779
Housing Unit: 3-A-101
Facility: EMCF

Date: Dec 8, 2010

Reason for Complaint: Items Purchased from EMCF
Canteen, Confiscated During Shakedown.

Whom the Complaint is Against: EMCF Officers and Staff,
and Warden K. Reagans

Statement of Facts:
1) On monday evening (Dec 6th), at 11:00 rackdown, we were
   informed that we were then being placed under
   institutional lockdown.

2) On Wensday morning (Dec 8th), a large number of
   officers and staff members (including law library
   and mail room staff), entered Housing Unit 3's
   A-pod, and began a shakedown of the whole
   zone.

3) During the search of my cell, several item's
   that I had lawfully purchased from the EMCF
   ① (6-B) (Exhibit A, pg1)

canteen were confiscated from me unlawfully.

4) While sorting out the mess made out of my property by the Officers that performed the search, I found that the following items had been taken:

      1 pair hair trimmers $20.00 ✓
      1 pair Nail clippers $ 1.45 ✗
      1 Orange Fago Soda $ 1.20 ✓
      1 Spoon, plastic $ 0.10 ✓

        Note:
The hair trimmers were purchased from the Canteen about 7-8-years ago, the nail clippers, about 1-1½ years ago, the Orange Soda, 11-29-10, and the spoon about 1½ years ago (maybe less).

Relief Sought:

1) That the Items confiscated from my property be replaced (with no substitutions), or the cost of said Items (plus tax), be refunded immediately to my inmate account.

2) Correct the problem, by educating Officers + Staff as to the Items that are offered to Inmates via, the EMCF Canteen system. To prevent problems like this from ever happening again in the future. Note: None of these items were taken from any other inmate on the zone. (to which several inmates possess).

                Signed
                Keith Hall #R4779

2  (7-B)(Exhibit A, pg. 2)

# GEO East Mississippi Correctional Facility
## INMATE PERSONAL PROPERTY INVENTORY

Name: Merlin Hill    MDOC #: R4779    Date: 5-2-05

| PANTS | qty. | BEDDING | qty. | MISC. Cont. | qty. | PERSONAL HYGIENE | qt |
|---|---|---|---|---|---|---|---|
| G/W | | Antifungal Cream | 1 | Pictures | 86 | CLIPPERS | 1 |
| B/W | 2 | MATTRESS | 1 | BATTERIES | 6 | SOAP Irish Springs | 8 |
| R/W | | BLANKET | 1 | PLAYING CARDS | | SOAP DISH | 1 |
| | | SHEETS | 2 | CASSETTE TAPES | | LOTIONS | |
| SHIRTS | qty. | PILLOW | | RADIO # | 1 | SHAMPOO Suave | 2 |
| | | PILLOW CASE | 1 | | | BRUSH | |
| MDOC | 2 | TOWELS | 3 | HEADPHONES # | 1 | COMB | 2 |
| SWEATSHIRT | 1 | FACE CLOTH | 1 | | | TOOTHPASTE | 2 |
| | | LAUNDRY BAG | | WATCH | | TOOTHBRUSH | 2 |
| SHOES | qty. | Envolopes | 46 | RING | | TOOTHBRUSH | |
| | | MISCELLANEOUS | | NECKLACE | | HOLDER | |
| WORK | | Legal Size Envolope | 14 | GLASSES | | TOILET PAPER | 3 |
| TENNIS | 1 | PHOTOS | | CONTACT LENS | | DENTURES | |
| SHOWER | | BOOKS | | BOWLS | | DEODORANT | 2 |
| | | MAGAZINES | | CUPS / MUGS | | HAIR GREASE | |
| OTHER | qty. | RELIGIOUS BOOKS | | PEN / PENCILS | 4 | DO-RAG | |
| BOXERS | 6 | LETTERS | 62 | I. D. CARDS | 1 | Clipper oil | 1 |
| T-SHIRTS | | LEGAL BOOKS | | CRAKERS | | Cup | |
| THERMAL TOP | | LEGAL PAPERS | 5 | Bowl with Lid | 1 | Pauls douch butters | 8 |
| THERMAL BOTTOM | | WRITING PAD | 8 | MDOC HANDBOOK | 1 | Sqeege Cheese | 1 |
| SOCKS | 5pr | PENCILS / PENS | | | | Pizza Sauss | 1 |
| | | Deck of cards | 1 | | | The sauser | 1 |

**WERE VALUABLES PLACED IN THE SAFE?**

YES ☑    NO ☐

Valuables will be secured in a property envelope. They will be sealed and signed by the inmate and (2) staff witnesses before being placed in the safe.

Merlin Hill    R4779
Print Name (Inmate)    MDOC #

Sgt West
Signature (if present)

Sgt West    5-2-05 1900
Print Name (Officer)    Date / Time

Signature of Officer Receiving Property

Signature of Additional Officer    Date / Time
(if needed)

☐ Accepted by property room supervisor.    File & Bag #

☐ Rejected and returned.

Reason _____

_____

Personal property returned from inventory.

Signature _____ MDOC # _____ Date / Time

My signature indicates that all of the property listed on this form was returned to me in full.

Signature of Releasing Officer _____ Rank / Title

Date _____ Time _____

SAFE VALUABLES    Yes ☐    No ☐

(Exhibit A, pg 3)(4-A)+(8-B)

Note: A check mark by the ...

INMATE PROPERTY / NL/SMC REV 08.01.03)

R4779 : HILL, MERLIN D

Receipt #O091100917

Location: EM CCF EMCF UNIT 3 POD A BED 208L

EastMS                                  11/2/2009



Invoice :13420:EM CCF-20091102

| Code | Qty | Product | Price | Ext |
|------|-----|---------|-------|-----|
| 118 | 2 | FAYGO - ORANGE - 20 oz | 1.10 | 2.20 |
| 418 | 2 | PLASTIC SPOON | .10 | .20 |
| 611 | 1 | ZC - MONSTER ICED BUNZEEZ - 6 oz | 1.25 | 1.25 |
| 721 | 1 | ML-SOUR CREAM AND ONION CHIPS - 1.5 oz | .99 | .99 |
| 738 | 1 | ZC- PEANUT BUTTER WAFERS - 6-2oz | 2.75 | 2.75 |
| 911 | 1 | DIRECT BUY GREEN - MENTHOL - 2 oz | 5.00 | 5.00 |
| 940 | 1 | TOPPS ROLL PAPERS - 100 Papers/Book | 1.35 | 1.35 |

|  |  | SubTotal: | $13.74 | Tax: | $0.96 | Total: | $14.70 |

9  items

Start Balance:      $81.22

Delivered By: _____   Date: _____

Total Purchase:     $14.70

End Balance:        $66.52

Resident: _____          Recieved By

(10-B)   (Exhibit A, pg.4)

Location: EM CCF EMCF UNIT 3 POD A BED 101L
EastMS                                    12/6/2010



Invoice :18109:EM CCF-20101206

| Code | Qty | Product | Price | Ext |
|------|-----|---------|-------|-----|
| 118 | 1 | FAYGO - ORANGE - 20 oz | 1.20 | 1.20 |
| 436 | 1 | MAYONNAISE - 12 Pack | 1.49 | 1.49 |
| 611 | 2 | ZC - MONSTER ICED BUNZEEZ - 6 oz | 1.45 | 2.90 |
| 691 | 6 | RAMEN BEEF NOODLES - 3 oz | 0.55 | 3.30 |
| 942 | 10 | BOOK MATCHES - Per Book | 0.10 | 1.00 |

SubTotal: $9.89    Tax: $0.69    Total: $10.58

20 items

| | |
|---|---|
| Start Balance: | $21.75 |
| Total Purchase: | $10.58 |
| End Balance: | $11.17 |

Delivered By: _____ Date: _____

Resident: _____ Recieved By



(11-B)    (Exhibit A, pg 5)

YOUR ARP HAS BEEN ACCEPTED AND
MAILED TO PARCHMAN.  YOU WILL
RECEIVE A COPY OF YOUR ORIGINAL
COMPLAINT WITH YOUR FIRST STEP
RESPONSE.  IF YOU HAVE OTHER
ARP'S ON FILE YOU WILL RECEIVE
NOTIFICATION THAT THIS ARP WILL
BE PLACED IN BACKLOG.

ARP RE:  Property taken DUrING ShakeDown

MRS. BIRDTAIL & MS JACKSON, ARP
DEPT.

(13-B)     Exhibit A, pg. 7)

ARP-2

## MISSISSIPPI DEPARTMENT OF CORRECTIONS
### Administrative Remedy Program

NUMBER EMCF - 11 - 135

## FIRST STEP RESPONSE FORM

Type or use ball point pen. You must return your response to the Legal Claims Adjudicator within 30 days of the date the request was initiated.

TO: Merlin Hill # R4779      EMCF
_____    _____
Inmate's Name and DOC#            Housing Unit

FROM: Major Mize          EMCF
_____    _____
Person to whom 1st Step is Directed       Title/Location

If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Legal Claims Adjudicator within 5 days of your receipt of this decision.

Upon investigation and your ability to provide receipts
for the items missing, your relief will be granted.
An order for the hair clippers, plastic spoon, and the
20 oz Orange Faygo is being submitted and will be
delivered to you upon arrival.

Note: I received Norelco 6370 Clippers w/attachments + charger,
along with 20oz Orange Fanta soda on March 30, 2011.

_____      2/20/11
Smith for Major Mize                                                         
Signature                                       Date

(X) I am not satisfied with this response and wish to proceed to Step Two.
     REASON:
I will not release this ARP until I have received
the above named Items - I have signed off on this ARP on
                                       March 30, 2011

( ) I wish to cancel this complaint. You do not have to return this and time limit will cancel complaint.

Merlin Hill     R4779                       2/22/11
Inmate's Signature     DOC#                               Date

(9-B) Exhibit A, pg 6)

Inmate's - COPY



**STATE OF MISSISSIPPI**
DEPARTMENT OF CORRECTIONS
CHRISTOPHER EPPS
COMMISSIONER

E.L. SPARKMAN
Deputy Commissioner(601)                    359-5619                    5736         Institutions
                                                                                      (FAX)

DATE:          December 21, 2010

TO:            Inmate, Merlin Hill #R4779

FROM:          DAVID PETRIE, LEGAL CLAIMS ADJUDICATOR
               ADMINISTRATIVE REMEDY PROGRAM

RE:            YOUR REQUEST FOR ADMINISTRATIVE REMEDY

Your most recent Request for Administrative Remedy which concerns property, has been
accepted, however, it is noted that you have a previously accepted ARP or ARP's which is/are
presently under review.  Your most recent request for Administrative Remedy is being set aside
for handling in due course.  If you wish to have your request handled now through the
Administrative Remedy Program, you may withdraw (in writing) all pending ARP's.


DP:    jab

pc:    ARP File

ARP for Property taken
during Shakedown

Completed + Won March 30, 2011

(Exhibit A, pg 8)

(12-B)

THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY.

Name: Merlin Hill
Number: R4779
Housing Unit: 3-A-101
Facility: EMCF

Date: Jan. 28, 2017 — Date of Incident: Jan. 4, 2017.

Reason for Complaint: Items Stolen by other inmates during lockdown and allowed by Officers.

Whom the Complaint is Against: EMCF Officers, Staff and Captain Dice and Warden F. Shaw.

## STATEMENT OF FACTS:

1) On Dec. 8, 2010, during a shakedown several items (legally purchased from the EMCF Canteen), were illegally confiscated from my locker. One of those items was a hair + beard trimmers. On Dec. 8, 2010, I filed an ARP to have the illegally confiscated items be returned or replaced, upon investigation, and my providing receipts (and property inventory slip) for the items, I was granted full relief at the first step of the ARP, and received replacements for all items on March 30, 2011. (see Exhibit A, attached).

2) The replacement hair + beard Clippers (Philips-Norelco G370), had an internal (NON-removable), rechargeable Nickel Metal Hydride battery which required a full 10 hours to fully charge the unit for up to 35 minutes of use. (see Exhibit B, attached).

3) Initially I requested that the Officers charge it for me in the tower, for fear that someone would attempt to steal it if I charged it on the Zone, and for a short period of time they did so. But then they told me that I needed to have the Unit Manager charge it for me. The Unit Manager (Mrs. Thomas), recomended that I plug them up at night and take them down in the morning — since there is no continuous 10 hour block of time during the day that is not interrupted by a lockdown for a count (07:30, and 16:00).

(Exhibit B, pg1)

(1)

4) From that point foreward I would plug them in under the TV near my Cell (3-A-101) at 18:45, and sit in the dayroom and watch that nobody messed with them until rackdown, I would always inform the Officers on duty what was plugged up under the TV, and provided proof that it was mine and that I was allowed to have them, once an officer called Captain Dice to the Zone to verify my claim, another time an Officer called the Warden (who took them and my ARP someplace to verify my claim, then later that morning returned the Clippers, charger and ARP to me).

5) On Jan 3, 2017 at 18:45, I plugged my Clippers into the outlet below the TV nearest my Cell (3-A-101), I followed my usual routine, I sat in the dayroom watching them until 23:00 rackdown, I told the Officer that I had my Clippers under the TV charging until 05:00, then I placed a chair at my door to sit up all night and watch my Clippers (as I always did).

6) On Jan. 4, 2017, 02:00, Tohmas Riley came to my door and said that he needed to use my Clippers to cut his hair before morning, I said no and started screaming for help. Just then the dayroom lights came on and the two female Officers entered the Zone to do 02:00 count. When the Officers got within 10 feet of the TV, Tohmas Riley's roomate Dalton Gardner grabbed a chair, ran up to the TV and tried to untie the cords holding my Clippers bag to the TV's power cord, when he couldn't untie the knots he yanked it off and both he and Tohmas Riley ran back to their Cell (3-A-205). The whole time I was calling over and over for them to stop them - They made no attempt at all to intervene in the theft of my Clippers. They spent atleast 10 minutes telling me that I had to show them a receipt to prove that they were mine before they would do anything (They did not even give Tohmas Riley, and Dalton Gardner an RVR for rigging their door so that they could let themselves out of their Cell during rackdown).

7) Some 20 minutes later several Officers entered the Zone and went to their Cell to search for my Clippers and Charger. When they finished (after less than 5 minutes), the Sgt, and the 2 female Officers that worked on HU-3, came to my

(2)   (Exhibit B, pg. 2)

Cell and he told me that they couldn't find them, probably — he theorized — because they must have passed them to somebody else. I tried to explain to him that Tohmas Riley has a tool to open his light (where he kept his Cell Phone and the drug "Spice" that he's addicted to), and they would most likely find my Clippers + Charger in there, his response was to tell me that they're gone and I should just ~~come~~ accept that, then he and the 2 Female Officers left.

8) In the morning, Captain Dice and 2 other Officers came to the Zone. Captain Dice informed inmate Tohmas Riley and inmate Dalton Gardner that he was moving them and said they would be locked down until they returned the Clippers and Charger. I approached Captain Dice about my Clippers and Charger and he promised me that he would get me my Clippers and Charger back, then he turned and stated that until my stuff was returned we would remain on lockdown through the weekend, both statements (by him), I must add were lies — he made no real attempt to find my stuff, and when 07:30 count cleared the doors rolled (no lockdown). I am tired of being lied to, until my stuff is replaced and people (MTC + Medical subcontractor employees), stop ~~the~~ lying to me, all agreements, signed or otherwise, are null + void.

### RELIEF SOUGHT:

1) That my hair and beard Clippers be replaced immediately.

2) That all Officers be trained and instructed to verify that all Cell doors are properly secured and not rigged by an inmate to open from the inside of the Cell, this will require that Officers open and check doors secured by inmates and not officers.

3) That Cell doors 3-A-101, 103, and 208, which have been inoperable for over a year, and require a key to open (which often means the inmates in these Cells remain locked in their Cells, with their meals passed to them under their doors, for as much as 3 hours after count clears because Officers too lazy to get the keys

(3)   (Exhibit B, pg. 3)

or too lazy to enter the Zone to unlock them),

INMATES INVOLVED:
  1) Tohmas Riley
  2) Dalton Gardner

KNOWN OFFICERS INVOLVED:
  Captain Dice
  Sgt. Willard - Did Shakedown
  Officer Tripplet ⎤ Unit 3, Duty Officers
  Officer Miles ⎦         that allowed theift.

Date: Jan. 28, 2017

Signed,
Mark Hill

(Exhibit B, pg 4)

(4)

ARP-2

# MISSISSIPPI DEPARTMENT OF CORRECTIONS
## Administrative Remedy Program

**NUMBER** EMCF - 17 - 210

## FIRST STEP RESPONSE FORM

Type or use ball point pen.  You must return your response to the Administrative Remedy Program Director within 30 days of the date the request was initiated

To: Merlin Hill R4779

_____Inmate's Name and DOC#_____     EMCF

_____     _____Housing Unit_____

From: Maura Vice

_____Person to whom 1st Step is Directed_____     EMCF

_____     _____Title/Location_____

If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Administrative Remedy Program Director within 5 days of your receipt of this decision.

MTC is not Responsible for Items
That been Granted you, The Clippers Are
not Allowed in This facility, you Do not
have A Recipt, This was not Purchased
Through Cantteen, There is no Record of These
Clippers Ever Being in this facility I Cannot
Grant Any Relief.

_____     2-7-17
Signature     Date

(X) I am not satisfied with this response and wish to proceed to Step Two.
REASON:

See Enclosed "Rebuttal to ARP 'EMCF-17-210' First Step Response."

_____

( ) I wish to cancel this complaint.  You do not have to return this and time limits will cancel complaint.

Merl Hill #R4779     Feb. 9-17
Inmate's Signature     DOC#     (Exhibit B, pg. 5)  Date

**Inmate's - Copy**

## Rebuttal to ARP "EMCF-17-210" First Step Response.

In Major Rice's Response to my ARP (at the First Step), he made 4 claims. In response to his First (false), claim I respond as follows:

1. Back in 2001-2002, several inmates filed ARP's against Not being allowed to buy or use razors, because inmates (such as myself) swallowed the blades in attempt to harm themselves, in the ARP's they recomended that inmates be allowed to purchase battery operated - or rechargable - hair + beard Clippers/Trimmers, the ARP's were granted by the MDOC Commissioner + Security Warden S. Crosson, together with the Canteen Officer/Manager Mrs. Gloria (Kent?)(Kinard)(who along with her daughter still live in Meridian + both operated the EMCF Canteen until the State Legislature combined all the individual Facility Canteens into a single contract given to J.B. Enterprizes in Rankin Co. in 2005), selected 2-Types of battery operated Clippers to sell on EMCF's Canteen

2. In response to his second claim, he is also incorrect, I provided a property receipt from 5-2-05, where Sgt. Westmoorland processed my property when I went to stay in Medical after an injury to my back, he threw away all my Canteen Receipts, and he failed to secure my property correctly and several items ~~there~~ were stolen, I filed an ARP (see attached Exhibit-A, 13-pages), at the First Step (or before), Ms. Noel (MDOC Contract Monitor at the time), called me to her office, with several high-end Officers, and reviewed her computer of all my past Canteen purchases, she awarded me between 30.⁰⁰ + 40.⁰⁰ for the items listed in the ARP (one of which was for Clipper Oil - also sold on the Canteen).

3. I actually had purchased 2-pairs of Clippers from the EMCF Canteen, the first pair had broken, and after purchasing a new pair I discarded the first, another inmate retreaved the broken pair and fixed them, because Ms. Gloria and/or her daughter always engraved an inmates MDOC No. on Clippers and radio's, they were confiscated from him during a shakedown, I was then called to the Case Mgr's Office ~~where~~ where he, thinking they were stolen, attempted to return them to me (late 2004-2005), I have a record of the conversation in my property but don't have access at this moment.

4. He claims that there is no record of these Clippers ever being in this Facility, also false, the most definitive - but Not the only - record of there existance is in/with ARP "EMCF-11-135", granted by Major Mize on 2/20/11 and when delivered to me by the ARP Coordinator

(1)   (Exhibit B, pg. 6)

on March 30, 2011, as well as the current Warden, CPT. Dice, and many other Officers and Staff (such as Clara ~~Thi~~ Thomas), are/have been fully aware of the ~~exist~~ existance of my clippers, but also that clippers (battery operated or rechargable), are allowed at this facility by MDOC and that they were sold on the Canteen at EMCF, ~~I~~ - inmates that can also testify to the validity of everything stated within this Rebuttal are Gregory Applewhite (#78276, 3-A), Christopher Meyer (3-A-110), Sol (he works with Maintenence - he also previously worked for Mrs. Gloria (Kent ? X~~~~) in the EMCF Canteen) and "Lucky" (who works in the law library), Mr. W. Bockert was also aware that clippers were allowed at EMCF and sold on the Canteen, as well as Former Warden Greer, Major Grubb, and Former ARP Adjudicator ~~the~~ Larry C. Hardy, Former Commishioner Christopher Epps, Glenn Spann - Former ARP Administrater, any and all of which may/will be called as witnesses at Trial.
(and David Petrie, Mrs. Birdtail, & Ms Jackson all formally of the EMCF ARP Dept - see attached Exhibit, pages 12 & 13).

Date: Feb. 11, 2017        The Receipt for My clippers is page 3 of this Rebuttal

Signed
Merlin Hill #R4779

Merlin Hill #R4779

(2)        (Exhibit B, pg. 7)

8/18/2003  10:30:44AM
O030814936
EMCF COMMISSARY

Starting Balance:  $247.20
Ending Balance:  $233.27
Order Total:  $13.93

| INVENTORY ID | DESCRIPTION | UNIT PRICE | QUANTITY | TOTAL (W/TAX) | REJECTION TEXT | USER OVERRIDE? | OVERRIDE REASON |
|---|---|---|---|---|---|---|---|
| 01061 | CP-101 | $0.93 | 14 | $13.93 | | N | |

8/25/2003  2:06:09PM
O030821809
EMCF COMMISSARY

Starting Balance: $233.27
Ending Balance: $223.09
Order Total: $10.18

| INVENTORY ID | DESCRIPTION | UNIT PRICE | QUANTITY | TOTAL (W/TAX) | REJECTION TEXT | USER OVERRIDE? | OVERRIDE REASON |
|---|---|---|---|---|---|---|---|
| 00625 | LD GRAN MACAROON | $0.25 | 12 | $3.21 | | N | |
| 01061 | CP-101 | $0.93 | 7 | $6.97 | | N | |

9/1/2003  1:05:31PM
O030900142
EMCF COMMISSARY

Starting Balance: $223.09
Ending Balance: $190.52
Order Total: $32.57

| INVENTORY ID | DESCRIPTION | UNIT PRICE | QUANTITY | TOTAL (W/TAX) | REJECTION TEXT | USER OVERRIDE? | OVERRIDE REASON |
|---|---|---|---|---|---|---|---|
| 00625 | LD GRAN MACAROON | $0.25 | 12 | $3.21 | | N | |
| 01061 | CP-101 | $0.93 | 8 | $7.96 | | N | |
| 01340 | TRIMMER TRANSLUCENT | $20.00 | 1 | $21.40 | | N | |

(3) (Exhibit B, pg. 8)

# MISSISSIPPI DEPARTMENT OF CORRECTIONS
## Administrative Remedy Program

## EMCF 17-210
## Second Step Response Form

You must respond to the inmate within 45 days of receipt of the appeal of the First Step Response.

Inmate's Name & #:**Merlin Hill #R4779**
Location: **EMCF**

From: **Warden F. Shaw**
Title: **Warden**

Your request for Administrative Remedy has been received and reviewed in this office on February 1, 2017 concerning your request to get your clippers back.

As stated in your first step response, Major Rice has stated that MTC is not responsible for items that GEO granted you. The clippers in question are not allowed in this facility and are considered contraband. You did supply a receipt for the purchase of these clippers dated September 2003. You also supplied a copy of an ARP EMCF 11-135 where you were granted relief for the missing clippers and you received new clippers on 3/11/2011. These are not allowable items now at EMCF. There is a list allowable items in the Inmate Handbook.

I trust that I have answered your concerns pertaining to your complaint and you consider this matter closed.

_____
Signature

$2-16-17$
Date

The above named inmate has fulfilled the requirements of the Administrative Remedy Program and is eligible to seek judicial review within 30 days of receipt of the Second Step Response.

(Exhibit B, pg. 9)

INMATE RECEIPT

# MISSISSIPPI DEPARTMENT OF CORRECTIONS
## Administrative Remedy Program

ARP # EMCF - 17 - 210

Date: 2/17/17

Received By: Mark Hall ## R4779

Witness: Chall                     Opp Clerk

_____ Form ARP-1 — Offender's relief form

_____ Form ARP-2 — 1st step response

___✓___ Form ARP-3 — 2nd step response /CEPt

_____ 5-Day extension

_____ Step 2 denial

_____ Rejected

_____ Letter #

_____ Other

1st page of this receipt is to be returned to the Administrative Remedy
Program Director to become part of inmate's ARP file

(Exhibit B, pg. 10)

YELLOW COPY - INMATE